# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DINA BURRIS,

      Plaintiff,

v.                                                       Case No. 08-CV-322

AURORA HEALTH CARE LONG TERM
DISABILITY PLAN,

      Defendant.

_____

## ORDER

On April 17, 2008, plaintiff filed her Complaint (Docket #1) against Aurora Health Care, Inc., but then later filed an Amended Complaint (Docket #12) naming Aurora Health Care Long Term Disability Plan ("Aurora" or "the Plan") as the proper defendant, effectively dismissing Aurora Health Care, Inc.. Plaintiff's claim alleges that Aurora, a "Welfare Benefit Plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), wrongfully terminated plaintiff's long term disability benefits. Plaintiff seeks restoration of those benefits pursuant to 29 U.S.C. §§ 1132(a)(1)(3). Aurora, however, has filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Docket #20) contending that plaintiff's complaint was not filed within the applicable time period. For the reasons set forth below, the court finds Aurora is estopped from utilizing this defense, and accordingly denies Aurora's Motion to Dismiss.

## I.  FACTS

The Plan creates a two-step system whereby a claimant can appeal an initial decision to deny or terminate long-term benefits. (Wilson Aff., Ex. 1 at 19-21). It is only after the initial determination and the appeal that a claimant may thereafter file a legal action. (Id. at 21). Additionally, any legal action must be filed within 180 days of receiving the "final review notice." (Id.).

Plaintiff began receiving long-term disability benefits in November of 2004. (Am. Compl. ¶¶ 6-7). In October of 2006, the Plan's administrator[1] arranged for an independent medical examination of plaintiff in order to determine her eligibility to continue receiving benefits. (Id. ¶ 10). After reviewing the examiner's report, Aurora notified plaintiff, by letter dated November 22, 2006, that it was denying plaintiff's claim for continuation of benefits. (Id. ¶ 12). Plaintiff appealed this decision in May 2007. (Id. ¶ 12). By letter dated September 25, 2007, Aurora informed plaintiff that it was upholding the decision to deny the continuation of benefits. (Cabaniss Aff., Ex. F).  Plaintiff's attorney, who, due to confusing language in the letter, was unaware that the letter was the "final review notice" – thus triggering the 180-day period – sent the Plan a letter, dated December 13, 2007, inquiring as to when it would provide plaintiff with the "final review notice." (Id., Ex. G). The Plan, by way of letter dated December 18, 2007, informed plaintiff and her attorney that the

---

[1] The Plan administrator, Matrix Absence Management, Inc., is a third party company contracted by Aurora to administer its benefits plan. The correspondences referred to in this case were actually between Matrix and plaintiff's attorney. However, as Matrix was acting as the Plan's agent, for the sake of convenience and clarity, the court will simply include Matrix within the "Aurora/the Plan" designations.

September 25, 2007 letter was the "final review notice." (Id., Ex. H). Plaintiff thereafter filed this suit on April 17, 2008, 203 days after the September 25, 2007 letter was mailed, and 23 days after the 180-day time period expired, if in fact that time period began to run on September 25, 2007.

**II.    LAW**

A Fed. R. Civ. P. 12(b)(6) motion to dismiss alleges that even if all plaintiff's allegations are true, plaintiff still would not be entitled to relief. The basis for defendant's motion is that, regardless of the merits of plaintiff's allegations, plaintiff's failure to bring this suit during the applicable time period means that it must be dismissed. Aurora is correct on this point, for "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). Admittedly, the applicable time period here is not a statute of limitations, it is a contractual limitation period. However, the Seventh Circuit has expressly held that "contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable." *Doe v. Blue Cross & Blue Shield United Wisconsin*, 112 F.3d 869, 874 (7th Cir. 1997). In *Doe,* the court upheld an ERISA plan's 39-month contractual limitations period as reasonable. 112 F.3d at 875. The court also insinuated that a much shorter limitation period would be reasonable with respect to ERISA cases. *Id.* ("A suit under ERISA, following as it does upon the completion of an ERISA-required internal appeals process, is the equivalent of a suit to set aside an administrative decision, and ordinarily no more

-3-

than 30 or 60 days is allowed within which to file such a suit."). The court finds this rationale compelling, and holds that, indeed, a contractual limitation requiring an ERISA suit to be commenced within 180 days from a final review notice is reasonable and thus enforceable.

In fact, plaintiff does not dispute that the 180-day contractual limitation is reasonable and thus enforceable. Plaintiff argues that the doctrine of equitable estoppel should prevent defendant from invoking the 180-day limitation period in this case. The court again finds it useful to look to the Seventh Circuit's ruling in *Doe*. The *Doe* court held that the doctrine of equitable estoppel does apply in the ERISA context when it comes to "purely procedural provisions of a plan," such as contractual time limitation provisions. *Id.* at 876. The doctrine of equitable estoppel, as articulated in *Doe*, holds that "if the defendant through representations or otherwise prevents the plaintiff from suing within the limitations period, the plaintiff may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit." *Id.* Aurora proposes that for plaintiff to rely on estoppel, she must show the following elements: (1) a knowing misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; (4) to the plaintiff's detriment. (Def. Reply Br. at 2) (*citing Davis v. Combes*, 294 F.3d 931, 939 (7th Cir. 2002)) (*citing Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000)). Indeed, these are the elements for federal common law estoppel set forth in *Downs* and *Davis*. However, for the court to state estoppel can only apply when these elements are met would

be to overrule *Doe.* In *Doe*, one of defendant's lawyers sent a letter in October asking plaintiff's lawyer not to file suit until defendant's lead attorney was back from medical leave and could discuss settlement options with plaintiff. 112 F.3d at 876. Since it was known that the lead attorney would not be back until the end of November, the court held that the defense impliedly agreed to toll any contractual limitations periods that might otherwise expire prior to the end of November. *Id.* at 876-77. Thus, equitable estoppel prevented defendant from asserting the contractual limitations period for claims that would have expired during that time period. *Id.* Important to the discussion here is the fact that there was no instance of false misrepresentation in *Doe*, yet the doctrine of equitable estoppel still applied. Furthermore, the situation in *Doe* – defendant being estopped from asserting a limitations period – is much more similar to the instant case than the situations in *Downs* and *Davis*. *Downs* dealt with estoppel in terms of entitlement to additional benefits (beyond what was expressly stated in the plan), 214 F.3d at 805-06, and *Davis* dealt with estoppel in terms of a death beneficiary designation, 294 F.3d at 939-40. Thus *Downs* and *Davis* both dealt with the use of estoppel to vary from the substantive terms of an ERISA plan, whereas *Doe* and this case pertain to the procedural terms of an ERISA plan. As earlier noted, the *Doe* court clearly thought the distinction between substantive provisions and "purely procedural provisions" was significant. 112 F.3d at 876. Accordingly, the court concludes that plaintiff in this case does not necessarily have to meet the four elements set out in *Davis* and *Downs*. Rather, plaintiff merely has to show that "the defendant through

-5-

Case 2:08-cv-00322-JPS   Filed 03/13/09   Page 5 of 11   Document 26

representations or otherwise prevent[ed] the plaintiff from suing within the limitations period." *Doe*, 112 F.3d at 876. If such is the case, then Burris "may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit." That said, the court further concludes that should the four element estoppel rule in *Downs* and *Davis* apply, plaintiff would also prevail, as she sufficiently meets each of the four elements.

### III.   APPLICATION OF LAW TO FACTS

The basis for plaintiff's estoppel defense is confusing language in the September 25, 2007 letter. This language is found in the last three paragraphs which read:

> Since the plan criteria for continuing disability benefits has not been met, the denial is upheld. The plan's definition is not satisfied from either a diagnostic standpoint or from a physical capacities standpoint. As Ms. Burris' [sic] appeal for benefits is denied (partially or completely), *she will receive a written notice that will include:*
> • The specific reason or reasons for the denial;
> • Specific references to pertinent provisions of the plan document on which the denial is based;
> • A notice of Ms. Burris' [sic] right, upon request and free of charge to have reasonable access to, and copies of, all documents, records and other information relevant to her claim for benefits;
> • A description of any voluntary appeal procedures offered by the plan and her right to obtain information about the procedures; and
> • A notice of her right to bring civil action under ERISA.
> . . .
>
> She may not begin any legal action, including proceedings before administrative agencies, until she has followed these procedures and exhausted the opportunities described in this section. . . . These review procedures shall be the exclusive mechanism through which determinations of eligibility and benefits may be appealed.

-6-

> If after following the review process outlined here, she is not satisfied with the result, then she may file any legal action within 180 days of receiving the final review notice under these procedures.

(Cabaniss Aff., Ex. F at 4) (emphasis added). Furthermore, for all of the importance placed on the "final review notice," nowhere in this letter does the Plan state that this letter is the "final review notice." This is not to say that a "final review notice" must use those words in order to put a claimant on notice that that is what it is (though it certainly baffles the mind as to why a company would risk obfuscating such an important detail, especially when the solution is so straightforward). Yet, given the inherently confusing content of the letter Burris received, the lack of any language specifically designating this letter as the "final review notice" only adds credibility to her assertion that she did not realize that the letter was the final review notice. Indeed, the fact that plaintiff thought the final review notice was still forthcoming (as the September 25, 2007 letter in fact stated it was), is evidenced by the fact that plaintiff's attorney sent a letter in December to find out when plaintiff would receive the promised final review notice so that they could move forward.

Given the misleading language in the September 25, 2007 letter, as well as the convincing evidence that plaintiff was misled by the letter, the court finds that "defendant through representations . . . prevent[ed] the plaintiff from suing within the limitations period." The word "prevent" raises two important issues. First, "prevent" does not have to mean that defendant made it impossible for plaintiff to proceed. To wit, in *Doe* defendant merely asked plaintiff to postpone filing suit until further

negotiation settlements could be undertaken. The plaintiff in *Doe* was free to ignore that request. Yet, this was sufficient to toll the time period. Thus, "prevent" cannot be given an overly strict definition. Whatever the limits of the definition, this case clearly falls within it, for here plaintiff was more "prevented" than in *Doe*, for here plaintiff had every right to think that filing suit would be a violation of the Plan's contractual provisions preventing her from doing so prior to receipt of the final review notice. Secondly, "prevent" should not be read as narrowly as to have "made it impossible to file within the time period." Defendant suggests that the court adopt such a meaning, urging that even if plaintiff was confused by the letter, that confusion was ameliorated on December 18, 2007, leaving her with 96 days to file a timely complaint. (Def. Reply Br. at 3). Thus, Burris still had a reasonable amount of time within which to file. (Id.). However, *Doe* expressly rejects this contention:

> [T]he plaintiff may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit. It is possible to argue-indeed it is the majority position, that the plaintiff should be allowed only a "reasonable" amount of time within which to sue after the defendant's delaying tactics have ended. Although the question is a very close one, it seems to us that determining what is "reasonable" in this context injects unnecessary uncertainty into the judicial inquiry; and we have trouble seeing why a defendant whose own activities made the plaintiff miss the deadline should be allowed to litigate over whether the plaintiff could have sued earlier.

*Doe*, 112 F.3d at 876 (internal citations omitted). Accordingly, plaintiff has met the requirements to justify estoppel as articulated in *Doe*.

Moreover, if the four element estoppel test were to apply, plaintiff would meet those elements as well. Again, those four elements include: (1) a knowing

-8-

misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; (4) to the plaintiff's detriment. *Downs*, 214 F.3d at 805. The second and fourth elements are clearly met. There can certainly be no argument that defendant did not misrepresent the facts, for the letter stated unequivocally that plaintiff would, in the future, "receive a written notice that will include: . . . [a] description of any voluntary appeal procedures offered by the plan and her right to obtain information about the procedures; and [a] notice of her right to bring civil action under ERISA." (Cabaniss Aff., Ex. F at 4). Since this assertion was undeniably false, it was a misrepresentation. Furthermore, defendant knowingly made it. Perhaps defendant did not intend to mislead, but defendant made the statement and knew at the time that this letter was meant to serve as the final review notice. One who makes a statement knowing it to be untrue – regardless of whether the statement is made out of ill intent or mere recklessness – makes a knowing misrepresentation. Likewise, the third element is met as well, because plaintiff clearly did rely on the misrepresentation, and that reliance was reasonable. Defendant argues that plaintiff cannot claim to have been confused by the letter because the letter was clearly a final review notice. To support this contention, Aurora points to statements in the letter such as: "per the plan criteria, which are stated . . . below, we find the denial was appropriate and is upheld," and "since the plan criteria for continuing disability benefits has not been met, the denial is upheld[;] [t]he plan's definition is not satisfied from either a diagnostic standpoint or from a physical capacities standpoint." Certainly these passages do put plaintiff on notice

-9-

that her appeal had been denied. However, the contract by which she was bound limited her right to bring a legal action; the letter she received informed her that she would be receiving a "notice of her right to bring a civil action." Thus, it was entirely reasonable for her to conclude that until she received that notice, she could not bring a legal action without risk of violating the contract by which she was bound, a contract drafted by defendant. Perhaps more important is the fact the letter was drafted by defendant. Indeed, it is axiomatic that ambiguities, such as existed in the letter, are construed against the drafter. *See Walters v. National Properties, LLC.*, 699 N.W.2d 71, 75 (Wis. 2005) (describing *contra proferentem* doctrine as "a universally accepted legal maxim that any ambiguities in a document are to be construed unfavorably to the drafter."). Were the court to grant defendant's motion to dismiss, it would essentially be imposing the costs on plaintiff of defendant's poor drafting. Thus, plaintiff's reliance on defendant's knowing, written, misrepresentations was reasonable, as well as to her detriment.

## IV. CONCLUSION

It would certainly be inherently inequitable to allow defendant to contractually limit plaintiff's ability to bring suit until exhausting internal procedures, as well as allowing defendant to limit the time period during which she can bring suit, but to then turn the table and reward defendant for the confusion it created. The court agrees with the Seventh Circuit's finding that "where parties by contract shorten the period of limitations that the government had deemed the appropriate outer bounds for suit, and then one of the parties does something that makes it inequitable to hold

the other party to the shortened period, there is no social interest in preventing the period from being enlarged." *Doe*, 112 F.3d at 876. This is especially true where, as here, the contractual limitations period was entirely drafted by one party, leaving the other party with virtually no bargaining power whatsoever.

Accordingly

**IT IS ORDERED** that defendant's Motion to Dismiss (Docket #20) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge